WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cesar F Maytorena, | No. CV-15-00296-TUC-RM (BPV) |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

On July 9, 2015, Petitioner Cesar F. Maytorena filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition"). (Doc. 1.) On August 10, 2015, the Court ordered Respondents to answer the Petition. (Doc. 12.)[1] On November 23, 2015, Respondents filed an Answer limited to affirmative defenses. (Doc. 22.) Petitioner filed a Reply on April 22, 2016. (Doc. 28; *see also* Doc. 29.) On September 10, 2016, Petitioner filed a memorandum titled Supplemental Case Law. (Docs. 30, 31.) Respondents filed a Response to the Supplemental Case Law (Doc. 37), Petitioner filed a Reply (Doc. 40), and Respondents filed a Surreply (Doc. 49).

**I.      Factual & Procedural Background**

   **A.      Trial and Appeal**

   Petitioner was found guilty after a jury trial of second-degree murder, eight counts

---

[1] In the August 10, 2015 Order, the Court referred this matter to Magistrate Judge Bernardo P. Velasco for further proceedings and a report and recommendation. (Doc. 12 at 3.) The Court now withdraws the magistrate-judge reference.

of aggravated assault, and six counts of endangerment. (Doc. 1-2 at 26.)[2] The trial court sentenced him to aggravated, concurrent and consecutive prison terms totaling 145 years. (*Id.*) Petitioner was represented by attorney Eric Larsen during his trial and sentencing. The Arizona Court of Appeals summarized the facts established at trial as follows:[3]

> The charges stemmed from two shooting incidents involving [Petitioner] and his friends and the victim, A., and his friends. The first incident began with a fist fight between the two groups in Rodeo Park in December 1998. As the fight ended and the parties began to disperse, [Petitioner] fired a shotgun at a car belonging to a member of the other group, leaving a large hole in the driver's-side door.
>
> The second incident occurred a few days later on New Year's Eve. [Petitioner] celebrated the new year at a friend's house by drinking alcohol with his group of friends and firing shots into the air at midnight. At the same time, A. and his friends were celebrating by drinking alcohol and firing shots into the air at a New Year's Eve party in the back yard of a friend's house.
>
> At some point during the evening, [Petitioner] and his friends drove to a local convenience store where they saw A. and his friends in two cars. After exchanging accusations about a prior shooting incident between them, the two groups drove away. With first one car leading and then another, the two groups fired multiple gunshots at each other before separating and returning to their respective parties. At around 3:45 a.m., [Petitioner] and a friend drove to the New Year's Eve party A. was attending. Shots were fired into the crowd, killing A and wounding seven others.

(*Id.* at 26-27.)

On appeal, Petitioner—represented by attorney R. Lamar Couser—presented the following issues:

1. The trial court erred in holding an in camera, *ex parte* hearing with the prosecutor.

2. The trial court deprived Petitioner of his right to a speedy trial by granting a continuance due to the assigned prosecutor's unavailability, which is a legally inadequate excuse in light of the size of the County Attorney's staff.

3. The State committed prosecutorial misconduct by improperly molding the

---

[2] All record citations refer to the page numbers generated by the Court's electronic filing system.

[3] The Arizona Court of Appeals' factual findings are presumed to be correct, and Petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981).

testimony of witnesses Omar Johansen and Ernesto Santa Maria through threats of prosecution for perjury.

4. The trial court deprived Petitioner of a fair and impartial judge and a fair trial by badgering witnesses Omar Johansen and Ernesto Santa Maria, accusing them of perjury and threatening them with contempt and/or prosecution.
5. The trial court erred in denying a mistrial after the State elicited testimony that witness DeAngelo Rivera had met Petitioner at the Department of Corrections.
6. The trial court erred in denying Petitioner's motion for judgment of acquittal as to counts 2, 3, and 4.

(*See* Doc. 22-1 at 3-106.)

On April 30, 2003, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 1-2 at 25-41.) The appellate court found that the trial court's *ex parte* conference with the prosecutor did not comply with Arizona's Code of Judicial Conduct but that it did not require reversal of Petitioner's convictions because Petitioner had not established that the error was prejudicial. (*Id.* at 27-30.) The appellate court similarly rejected Petitioner's speedy trial claim for failure to establish prejudice. (*Id.* at 30-31.) The appellate court found that the prosecutor's conduct in relation to witnesses Johansen and Santa Maria was consistent with her ethical duties. (*Id.* at 38.) Although the appellate court criticized the trial court's lengthy admonitions of those witnesses, it found that the admonitions "were neither coercive nor personally threatening" and therefore did not require reversal. (*Id.* at 31-37.) The appellate court found no abuse of discretion in the trial court's denial of Petitioner's motion for mistrial (*id.* at 38-39) and no error in the trial court's denial of Petitioner's motion for judgment of acquittal (*id.* at 40-41).

The Arizona Supreme Court summarily denied review on December 5, 2003. (Doc. 1-2 at 43.) Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. The Arizona Court of Appeals issued its mandate on March 2, 2004. (Doc. 1-2 at 45.)

**B. State Post-Conviction Proceedings**

On May 11, 2001, Petitioner—represented by attorney R. Lamar Couser—filed a petition for post-conviction relief ("PCR Petition") under Rule 32 of the Arizona Rules of Criminal Procedure. (Doc. 22-2 at 14-34.) In the PCR Petition, Petitioner argued that he was entitled to PCR relief by virtue of an in camera, *ex parte* hearing conducted by the trial judge with the prosecutor. (*Id.*) The Pima County Superior Court summarily denied post-conviction relief on November 19, 2001. (Doc. 1-2 at 49.) Petitioner did not file a petition for review of that decision in the Arizona Court of Appeals. (Doc. 1 at 10, 24.)

On April 14, 2011, Petitioner—represented by attorney Thomas Higgins—filed a memorandum in support of Rule 32 PCR Petition. (Doc. 1-4 at 4-37.) Because there was no PCR Petition pending, the trial court ordered Petitioner's counsel to clarify the situation. (Doc. 22-2 at 66-67.)[4] On July 15, 2011, Petitioner filed a PCR Notice and PCR Petition. (Doc. 1-4 at 39-46; Doc. 22-2 at 67, 71-77.) On August 11, 2011, the Pima County Superior Court found that the PCR Petition was untimely under Rule 32.4(a) of the Arizona Rules of Criminal Procedure and gave Petitioner 60 days to file a new petition containing arguments addressing timeliness. (Doc. 22-2 at 66-68.) Petitioner filed a supplemental memorandum in support of his claims (Doc. 1-4 at 48-69) and later filed a new PCR Petition and supporting memorandum through current counsel, Stanley Bloom (Doc. 1-5 at 4-62; Doc. 1-6 at 1-21). Petitioner raised claims of ineffective assistance of trial counsel at the plea bargaining stage (Doc. 1-5 at 17-20); ineffective assistance of trial counsel for failing to object to Petitioner's statements to police and failing to move for redaction of the statements (*id.* at 21-33); ineffective assistance of trial counsel for failing to prevent testimony that DeAngelo Rivera met

---

[4] In support of his § 2254 Petition, Petitioner submits receipts indicating that Higgins was paid $5,000.00 for "file review" in January 2009 and an additional $10,000 in May 2009. (Doc. 1-3 at 52, 54.) Petitioner also submits the first page of a document purporting to be a memorandum in support of a Rule 32 PCR Petition. (*Id.* at 56.) The document indicates it was submitted on September 4, 2009, but it is unsigned, reflects the wrong case number, and does not bear a stamp indicating it was filed. (*Id.*) The record also contains a copy of a letter sent by Petitioner to the Pima County Superior Court on December 12, 2010, inquiring as to whether the court received a Rule 32 PCR Petition. (*Id.* at 58.)

- 4 -

Petitioner in prison and for mishandling a related motion for mistrial (*id.* at 34-37); ineffective assistance of trial counsel for failing to object to improper prosecutorial closing argument (*id.* at 38-42); ineffective assistance of trial counsel for failing to object to erroneous jury instructions (*id.* at 42-46); ineffective assistance of trial counsel at sentencing (*id.* at 46-59); and an assortment of additional, miscellaneous ineffective assistance of counsel claims (*id.* at 59-62; Doc. 1-6 at 1-21).

The Pima County Superior Court dismissed Petitioner's PCR Petition as untimely and successive. (Doc. 1-7 at 4-11.) The court later denied reconsideration of its decision. (Doc. 1-7 at 12-16.)

The Arizona Court of Appeals granted review but denied relief in a memorandum decision filed on May 16, 2014. (Doc. 1-7 at 18-22.) The appellate court recognized that, pursuant to *State of Arizona v. Bennett*, 146 P.3d 63 (Ariz. 2006), ineffective assistance of appellate counsel claims can be raised in a successive Rule 32 proceeding if the defendant was represented by the same counsel both on appeal and in his first Rule 32 proceeding. (Doc. 1-7 at 20.) However, the court held that *Bennett* did not apply to Petitioner's second PCR Petition because the Petition was patently untimely. (*Id.*) The appellate court found that the untimeliness of the Petition precluded review of Petitioner's ineffective assistance of counsel claims, and it rejected Petitioner's claims under Rule 32.1(f) and 32.1(h). (*Id.* at 20-22.)

The Arizona Supreme Court summarily denied review on January 6, 2015, although Vice Chief Justice Pelander voted to grant review. (Doc. 1-7 at 24.)

**C.  Petitioner's Federal Habeas Petition**

Petitioner filed the currently pending habeas Petition pursuant to 28 U.S.C. § 2254 on July 9, 2015. (Doc. 1.) The Petition raises the following claims:

1. The Arizona courts erroneously denied Petitioner the right to challenge the ineffectiveness of his post-conviction relief counsel.

2. Ineffective assistance of trial counsel at the plea bargaining stage.

3. Ineffective assistance of trial counsel for failing to object to the admissibility of

1. statements made by Petitioner to the police and for failing to move for redaction of those statements.

4. Ineffective assistance of trial counsel for failing to file pretrial motions regarding Petitioner's incarceration history and for mishandling a motion for mistrial.

5. Ineffective assistance of trial counsel for failing to object to the prosecutor's improper closing argument.

6. Ineffective assistance of trial counsel for failing to object to erroneous jury instructions.

7. Ineffective assistance of trial counsel at sentencing.

(Id. at 23-148.) Each of the above claims contains numerous, more specific sub-claims of ineffective assistance of counsel, as well as other asserted errors. In addition, at the end of his § 2254 Petition, Petitioner raises an assortment of "additional Rule 32 ineffective assistance of counsel arguments." (*Id.* at 148-179.)

## II. Discussion

Respondents argue that Petitioner's § 2254 Petition is untimely and that all of the claims raised therein are procedurally defaulted.

Because Petitioner's federal habeas Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this case is governed by AEDPA. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).

### A. Statute of Limitations

A one-year period of limitation applies to petitions for writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). AEDPA's one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on

collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1). The limitation period is tolled during the time period in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). The limitation period is also subject to equitable tolling under certain circumstances. *Holland v. Florida*, 560 U.S. 631, 634 (2010).

### 1. Accrual Date

On December 3, 2003, the Arizona Supreme Court denied review of the Arizona Court of Appeals' affirmance of Petitioner's convictions and sentences. Petitioner then had 90 days—or until March 2, 2004—to seek certiorari in the United States Supreme Court. Petitioner did not seek certiorari, and thus his conviction became final on March 2, 2004. Accordingly, pursuant to 28 U.S.C. § 2244(d)(1)(A), the one-year period of limitation for filing a federal habeas corpus petition under 28 U.S.C. § 2254 expired on March 2, 2005. Petitioner concedes that he did not file his § 2254 Petition within one year of the date on which his conviction became final. (Doc. 28 at 3-4, 41, 48.)

As described above, § 2244(d)(1) contains multiple provisions setting forth events that trigger the running of the limitations period. Petitioner argues that 28 U.S.C. § 2244(d)(1)(B) is applicable; however, he fails to explain how "State action in violation of the Constitution or laws of the United States" impeded his ability to file a timely federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(B). To the extent that Petitioner is arguing that his ability to timely file his § 2254 Petition was impeded by his placement in a maximum security prison with limited access to legal materials and a law library, the Court notes that "[t]here is no constitutional right to file a timely § 2254 petition," and therefore Petitioner can establish the applicability of § 2244(d)(1)(B) only by showing that State action "prevented him from presenting his claims in *any* form, to *any* court." *Ramirez v. Yates*, 571 F.3d 993, 1000-1001 (9th Cir. 2009) (emphasis in original). Petitioner has not made this showing.

Neither Petitioner's § 2254 Petition (Doc. 1) nor his Reply (Doc. 28) mentions 28 U.S.C. § 2244(d)(1)(C), and the Court finds the provision inapplicable. To the extent that Petitioner is arguing that the United States Supreme Court recognized new constitutional rights in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012) (*see* Doc.1 at 29; Doc. 28 at 18, 26), that argument fails, as neither *Martinez* nor *Lafler* recognized a new constitutional right. *See Buenrostro v. United States*, 697 F.3d 1137, 1139-40 (9th Cir. 2012).

Petitioner argues that 28 U.S.C. § 2244(d)(1)(D) is applicable because he did not realize that he had meritorious ineffective assistance of counsel claims until he hired current counsel. (*See* Doc. 28 at 42-43.) However, the factual predicate of Petitioner's ineffective assistance claims could have been discovered as soon as the ineffective assistance was rendered. The limitations period begins to run when a "'prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2001)).

In conclusion, AEDPA's limitations period began to run on the date that Petitioner's conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A). Accordingly, absent tolling, the limitation period expired on March 2, 2005—more than a decade before Petitioner filed his § 2254 Petition.

### 2. Statutory Tolling

Petitioner argues that tolling under 28 U.S.C. § 2244(d)(2) accounts for the untimeliness of his § 2254 Petition. (*See* Doc. 28 at 4.) However, § 2244(d)(2) has no effect on the date that AEDPA's limitation period expired in this case, because Petitioner's initial Rule 32 PCR Petition was denied before his conviction became final, and his second PCR Petition was filed after the expiration of the limitation period under § 2244(d)(1). *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[W]e hold that section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."). Furthermore, the second PCR Petition was

not properly filed, because it was denied as untimely pursuant to state law. (*See* Doc. 1-7 at 18-22.)[5] "[I]f a state court denies a petition as untimely, none of the time before or during the court's consideration of that petition is statutorily tolled." *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005), *as amended by* 439 F.3d 993 (9th Cir. 2005); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).").

### 3. Equitable Tolling

"Equitable tolling is justified in few cases." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). The threshold necessary to trigger it is "very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks omitted). "Determining whether equitable tolling is warranted is a fact-specific inquiry." *Spitsyn*, 345 F.3d at 799 (internal quotation marks omitted). The party seeking to invoke equitable tolling "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda*, 292 F.3d at 1065.

A petitioner is entitled to equitable tolling of the § 2244(d) statute of limitations only if he establishes: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks omitted). The phrase "stood in his way" means that "an external force"—as opposed to the petitioner's own oversight, miscalculation, or negligence— must cause the untimeliness. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009). "The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). This causal connection cannot be established "if the petitioner, acting with

---

[5] Because the Arizona Supreme Court denied review without providing written reasoning (Doc. 1-7 at 24), the Court looks to the Arizona Court of Appeals' memorandum decision as the last-reasoned state-court decision. *See Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014) ("When a state court does not explain the reason for its decision," a federal court must "look through to the last state-court decision that provides a reasoned explanation capable of review." (internal quotation marks omitted)).

reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id.*; *see also Ramirez*, 571 F.3d at 997 (the petitioner must show that extraordinary circumstances "were the cause of his untimeliness" and "made it impossible to file a petition on time" (internal quotation marks and alteration omitted)).

A prisoner's lack of access to his legal file may warrant equitable tolling, but only if the lack of access made it impossible for the prisoner to timely file a federal habeas petition despite the prisoner's diligent pursuit of his rights. *See Ramirez*, 571 F.3d at 998. "Ordinary prison limitations" on law-library access do not constitute extraordinary circumstances justifying equitable tolling, particularly where a prisoner "offers no explanation of how or why his restricted library access made it impossible for him to file a timely § 2254 petition." *Id.*

"[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Similarly, a "garden variety claim of attorney negligence" does not warrant equitable tolling. *See Holland*, 560 U.S. at 651-52. However, "egregious attorney misconduct . . . may serve as a basis for equitable tolling." *Luna v. Kernan*, 784 F.3d 640, 649 (9th Cir. 2015).

### a. Extraordinary Circumstances

Petitioner argues that the record establishes his "due diligence . . . under extraordinary circumstances." (Doc. 28 at 54.) It appears that the "extraordinary circumstances" alleged by Petitioner include placement in a maximum security prison, frequent transfers, limited access to legal materials, erroneous advice by prison paralegals, lack of legal sophistication, indigence, lack of representation, and errors by prior counsel.

To support his argument that placement in maximum security confinement and frequent transfers interfered with his ability to timely file his § 2254 Petition, Petitioner submits copies of transfer records and an affidavit. (*See* Docs. 40-1 and 40-2.) The transfer records and affidavit indicate that from March 2004 to March 2005—the

limitations period for filing a timely § 2254 Petition—Petitioner was transferred from the Arizona State Prison Complex ("ASPC")-Florence to ASPC-Tucson, and then transferred several times to different units within ASPC-Tucson. (Doc. 40-1 at 2; *see also* Doc. 40-2 at 2.) At least one of the unit transfers appears to have resulted from a disciplinary violation. (Doc. 40-1 at 2.) Petitioner's affidavit describes the transfers, but it does not explain how they prevented Petitioner from timely filing his § 2254 Petition. Furthermore, Petitioner states that, after a July 2008 transfer, he "was finally able to settle in and seek out an attorney." (Doc. 40-2 at 3.) Thus, even if Petitioner could show that frequent transfers interfered with his ability to file a § 2254 Petition prior to 2008, by his own admission the interference ended in July 2008, and yet Petitioner waited seven more years before filing his § 2254 Petition.

Petitioner also complains that he lacked access to legal materials.[6] (*See, e.g.*, Doc. 28 at 10.) In an affidavit, Petitioner states that he attempted "to obtain some legal course materials in 2001, but was not permitted to obtain them." (Doc. 1-2 at 17.) Petitioner does not describe the materials that he attempted to obtain, nor does he explain how lack of access to those materials prevented him from timely filing his § 2254 Petition. Petitioner goes on to state that, "[f]rom 2004 to 2007, [he] sent letters to the resource law library requesting legal information, but was unable to receive any information." (*Id.*) Again, Petitioner does not explain what information he requested or how lack of access to that information made it impossible for him to timely file his § 2254 Petition. Petitioner complains generally that ADOC's prison library is inadequate and that it lacks case law. (Doc. 40-2 at 3.) However, he also states that in August 2009, he was transferred to the Browning Unit, where he lived next door to a prisoner who possessed "a very healthy amount of case law." (*Id.*) Because Petitioner has not adequately explained how a lack

---

[6] Petitioner's arguments appear to be focused on a lack of access to legal research materials, rather than a lack of access to his case file. In an affidavit, Petitioner indicates that his family contacted attorney Susan Fox in or around February 2005 and gave her all of Petitioner's legal documents, and that Fox thereafter became unavailable and unable to move forward on Petitioner's case. (Doc. 40-2 at 2.) However, Petitioner does not indicate that he lacked access to his case file as a result of Susan Fox's conduct.

- 11 -

of access to legal research materials made it impossible for him to file a timely § 2254 petition, he has not shown that he is entitled to equitable tolling on this ground. Furthermore, even if he had shown that lack of law-library access prevented him from filing a timely § 2254 petition, by his own admission he had access to "a very healthy amount of case law" by August 2009, and yet he did not file his § 2254 Petition until almost six years later.

Petitioner further complains that prison paralegals gave him erroneous legal advice regarding whether any sentencing issues existed in his case and whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), applied to him. (Doc. 1 at 18, 25; Doc. 1-2 at 17; Doc. 28 at 9-10.) According to his affidavits, from April 1, 2005 to November 1, 2005 and from January 1, 2007 to October 1, 2007, Petitioner requested information from prison paralegals regarding whether he had any sentencing issues and whether *Blakely* applied to him. (Doc. 1-2 at 17; *see also* Doc. 40-2 at 2.) He was told that he did not have any sentencing issues and that *Blakely* did not apply. (Doc. 1-2 at 17; Doc. 40-2 at 2.) Assuming that the advice of the prison paralegals was erroneous, that advice affected only sentencing claims premised on *Blakely* and *Apprendi*. Furthermore, in 2011, Petitioner filed a second Rule 32 PCR Petition that argued that *Apprendi* and *Blakely* applied to him. Accordingly, even if the advice of prison paralegals prevented Petitioner from filing a § 2254 petition challenging his sentencing prior to 2011, by his own admission, Petitioner was able to file court documents challenging his sentencing under *Apprendi* and *Blakely* by at least 2011, and yet he waited until 2015 before filing his § 2254 Petition.[7]

Petitioner also asserts that equitable tolling is warranted on account of his lack of legal sophistication, his indigence, and the conduct of his prior attorneys. (*See, e.g.*, Doc. 1 at 16-18, 25, 29-30; Doc. 28 at 10, 49.) In his affidavits, Petitioner states that he was

---

[7] Petitioner argues that he was properly attempting to exhaust state remedies prior to filing a federal habeas petition. However, that explanation is insufficient to explain the untimeliness of his § 2254 Petition. Petitioner could have filed a protective federal habeas petition and asked the federal court to stay and abey the federal habeas proceedings while he attempted to exhaust state remedies. *See Pace*, 544 U.S. at 416.

19 years old when he was arrested, and he had no legal background. (Doc. 1-2 at 16.) He has been indigent throughout the relevant proceedings. (*Id.* at 17; *see also* Doc. 28 at 10.) Due to his lack of legal sophistication, he was unaware that he had meritorious claims of ineffective assistance of counsel and plain errors, until attorney Thomas Higgins and present counsel Stanton Bloom raised the issues. (Doc. 1-2 at 17.) Petitioner also complains that his appellate attorney told him that there were no sentencing issues in his case. (*Id.* at 16-17.)[8]

"Petitioner's ignorance of the law and indigent status do not distinguish him from the great majority of inmates pursuing habeas corpus relief." *McMillan v. Ryan*, No. CV-15-02440-PHX-JJT (BSB), 2016 WL 1659131, at *4 (D. Ariz. Mar. 9, 2016). "If limited resources, lack of legal knowledge, and the difficulties of prison life were an excuse for not complying with the limitation period," AEDPA's statute of limitations "would be meaningless since virtually all incarcerated prisoners have these same problems in common." *Bolanos v. Kirkland*, No. 1:06-cv-00808-AWI-TAG HC, 2008 WL 928252, at *4 (E.D. Cal. Apr. 4, 2008). Petitioner's lack of legal sophistication and indigent status do not, on their own, entitle him to equitable tolling. *See McMillan*, 2016 WL 1659131, at *4.

The attorney errors asserted by Petitioner do not rise to the level of egregious misconduct that may warrant equitable tolling. Furthermore, Petitioner has not shown the requisite causation between the asserted attorney errors and his failure to timely file his § 2254 Petition. The majority of Petitioner's arguments pertain to the alleged ineffectiveness of his appellate and initial PCR attorney, R. Lamar Couser. Although Couser's conduct may be relevant to issues of exhaustion and procedural default,

---

[8] Although Petitioner argues that he "was totally unaware of his right to file a Rule 32 Petition alleging ineffective assistance of Trial and Appellate Counsel" (Doc. 1 at 14), this argument is contradicted by the record. In an affidavit, Petitioner concedes that his appellate attorney informed him that he could raise the issue of ineffective assistance of appellate counsel in a second Rule 32 proceeding if another attorney found any sentencing issues. (Doc. 1-2 at 17.) Furthermore, the record reflects that in February 2004, Couser sent Petitioner a letter informing him that he could file a second Rule 32 petition and attempt to counter a waiver argument by claiming that Couser was ineffective in not raising sentencing issues. (Doc. 1-3 at 6.)

Petitioner has not explained how that conduct made it impossible for him to timely file a § 2254 Petition. *See McMillan*, 2016 WL 1659131, at *4 (rejecting argument that alleged failures of Rule 32 counsel justified equitable tolling, as petitioner did "not explain how those failures prevented him from filing a timely habeas corpus petition" in federal court).

Petitioner indicates in an affidavit that, in or around February 2005, his family contacted attorney Susan Fox but that she thereafter "had some sort of family problem that caused her to be completely unavailable and unable to move forward on preparing [Petitioner's] 2254 petition." (Doc. 40-2 at 2.) Petitioner does not provide sufficient information from which the Court could determine whether attorney Fox's conduct constitutes client abandonment or other egregious conduct that could be categorized as "extraordinary circumstances" for purposes of equitable tolling. However, even if Petitioner were to provide more detailed information about Fox's conduct, he could not show that the conduct caused the untimeliness of his § 2254 Petition. After learning that Fox could not move forward with preparing a § 2254 petition, Petitioner could have contacted another attorney and, even if he lacked the funds to hire a different attorney at that time, he could have filed a § 2254 petition pro se.

Petitioner also complains about delay in the initiation of his second PCR proceedings allegedly caused by attorney Thomas Higgins, who apparently attempted to file a Rule 32 PCR Petition in 2009 but erroneously filed it under the wrong case number. However, "Petitioner's difficulties in filing a petition for post-conviction relief in the state court[] do not explain his failure to file a timely petition for writ of habeas corpus in this Court." *McMillan*, 2016 WL 1659131, at *4. Furthermore, as discussed above, the limitation period for filing Petitioner's § 2254 Petition expired in March 2005, and thus the limitation period would not have been tolled under 28 U.S.C. § 2244(d)(2) during the time that Petitioner's second PCR Petition was pending, even if the second PCR Petition had been filed in 2009 rather than in 2011.

Petitioner's reliance on *Martinez v. Ryan* to support equitable tolling is misplaced.

Pursuant to *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. *Martinez* applies only to procedural default issues and is inapplicable to the issue of equitable tolling of AEDPA's statute of limitations. *See McMillan*, 2016 WL 1659131, at *4; *see also Wheelwright v. Wofford*, No. 2:13-cv-0787-GGH(HC), 2014 WL 3851155, at *3 (E.D. Cal. Aug. 5, 2014).

Petitioner has not shown that extraordinary circumstances caused the untimeliness of his § 2254 Petition.

### b. Diligence

Even if Petitioner could establish extraordinary circumstances, he cannot establish diligence. Petitioner's § 2254 Petition is over ten years late. Although Petitioner makes conclusory arguments regarding diligence (*see, e.g.*, Doc. 28 at 51-52, 54, 58) and indicates that he made intermittent attempts to obtain legal information and/or legal representation at various points in time, he has fallen far short of establishing that he has been pursuing his rights diligently for over ten years. Even prior to hiring counsel in 2009, Petitioner could have filed a § 2254 petition pro se. Nothing in the record indicates that he made any attempt to do so. Petitioner's intermittent attempts to obtain legal information and legal representation are a far cry from the efforts of petitioners who have successfully established diligence in prior case law. *See, e.g.*, *Holland*, 560 U.S. at 652-54 (petitioner repeatedly contacted his attorney, emphasizing the need to file a timely federal habeas petition and identifying the applicable legal rules, and he prepared a habeas petition pro se the very day that he discovered that AEDPA's statute of limitations had expired due to his attorney's failings).

### 4. Miscarriage of Justice—Actual Innocence

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). However, "tenable actual-innocence gateway pleas are rare." *Id.* "To invoke the miscarriage of justice

Pursuant to *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. *Martinez* applies only to procedural default issues and is inapplicable to the issue of equitable tolling of AEDPA's statute of limitations. *See McMillan*, 2016 WL 1659131, at *4; *see also Wheelwright v. Wofford*, No. 2:13-cv-0787-GGH(HC), 2014 WL 3851155, at *3 (E.D. Cal. Aug. 5, 2014).

Petitioner has not shown that extraordinary circumstances caused the untimeliness of his § 2254 Petition.

### b. Diligence

Even if Petitioner could establish extraordinary circumstances, he cannot establish diligence. Petitioner's § 2254 Petition is over ten years late. Although Petitioner makes conclusory arguments regarding diligence (*see, e.g.*, Doc. 28 at 51-52, 54, 58) and indicates that he made intermittent attempts to obtain legal information and/or legal representation at various points in time, he has fallen far short of establishing that he has been pursuing his rights diligently for over ten years. Even prior to hiring counsel in 2009, Petitioner could have filed a § 2254 petition pro se. Nothing in the record indicates that he made any attempt to do so. Petitioner's intermittent attempts to obtain legal information and legal representation are a far cry from the efforts of petitioners who have successfully established diligence in prior case law. *See, e.g.*, *Holland*, 560 U.S. at 652-54 (petitioner repeatedly contacted his attorney, emphasizing the need to file a timely federal habeas petition and identifying the applicable legal rules, and he prepared a habeas petition pro se the very day that he discovered that AEDPA's statute of limitations had expired due to his attorney's failings).

### 4. Miscarriage of Justice—Actual Innocence

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). However, "tenable actual-innocence gateway pleas are rare." *Id.* "To invoke the miscarriage of justice

Pursuant to *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. *Martinez* applies only to procedural default issues and is inapplicable to the issue of equitable tolling of AEDPA's statute of limitations. *See McMillan*, 2016 WL 1659131, at *4; *see also Wheelwright v. Wofford*, No. 2:13-cv-0787-GGH(HC), 2014 WL 3851155, at *3 (E.D. Cal. Aug. 5, 2014).

Petitioner has not shown that extraordinary circumstances caused the untimeliness of his § 2254 Petition.

### b. Diligence

Even if Petitioner could establish extraordinary circumstances, he cannot establish diligence. Petitioner's § 2254 Petition is over ten years late. Although Petitioner makes conclusory arguments regarding diligence (*see, e.g.*, Doc. 28 at 51-52, 54, 58) and indicates that he made intermittent attempts to obtain legal information and/or legal representation at various points in time, he has fallen far short of establishing that he has been pursuing his rights diligently for over ten years. Even prior to hiring counsel in 2009, Petitioner could have filed a § 2254 petition pro se. Nothing in the record indicates that he made any attempt to do so. Petitioner's intermittent attempts to obtain legal information and legal representation are a far cry from the efforts of petitioners who have successfully established diligence in prior case law. *See, e.g.*, *Holland*, 560 U.S. at 652-54 (petitioner repeatedly contacted his attorney, emphasizing the need to file a timely federal habeas petition and identifying the applicable legal rules, and he prepared a habeas petition pro se the very day that he discovered that AEDPA's statute of limitations had expired due to his attorney's failings).

### 4. Miscarriage of Justice—Actual Innocence

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). However, "tenable actual-innocence gateway pleas are rare." *Id.* "To invoke the miscarriage of justice

exception to AEDPA's statute of limitations . . . , a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him" in light of "new evidence." *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). A petitioner cannot merely assert that the evidence presented at trial was insufficient; he must prove his innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

In the present case, Petitioner asserts his innocence, but he has not identified any new evidence that was not presented at trial. Without any new evidence of actual innocence, Petitioner cannot make the showing required to invoke the miscarriage of justice exception to AEDPA's statute of limitations.

### 5. Conclusion

For the reasons stated above, the Court finds that the one-year limitation period expired on March 2, 2005. Petitioner's currently pending § 2254 Petition (Doc. 1)—filed more than ten years late, on July 9, 2015—is barred by AEDPA's statute of limitations.

Petitioner has requested an evidentiary hearing on the issue of the statute of limitations. The Court finds that an evidentiary hearing would be futile because it is clear that Petitioner's § 2254 Petition is time-barred.

### B. Exhaustion and Procedural Default

A habeas petition filed on behalf of a person in custody pursuant to the judgment of a state court cannot be granted unless the petitioner satisfies AEDPA's exhaustion requirements. *See* 28 U.S.C. § 2254(b)(1); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To satisfy the exhaustion requirements, a petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim is considered procedurally defaulted if (1) the claim was presented in state court but found to be precluded based on an independent and adequate state procedural bar, or (2) the claim was not presented in state court and no state remedies are currently available because the court to which the

petitioner would be required to present the claim in order to meet the exhaustion requirement would find the claim procedurally barred under state law. *See Coleman*, 501 U.S. at 729-30, 732, 735 n.1. Federal courts may consider the merits of procedurally defaulted claims only if the petitioner demonstrates cause and prejudice, or a fundamental miscarriage of justice. *Id.* at 750.

It appears that most or all of Petitioner's claims are procedurally defaulted. However, having concluded that Petitioner's § 2254 Petition is clearly untimely, the Court declines to reach the parties' arguments concerning procedural default.

**IT IS ORDERED** that the reference to Magistrate Judge Bernardo P. Velasco is **withdrawn**.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **dismissed as untimely**. The Clerk of Court is directed to enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability, because reasonable jurists would not find the Court's ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473, 478, 484 (2000).

Dated this 6th day of February, 2018.

_____
Honorable Rosemary Márquez
United States District Judge